By the Court.—Freedman, J.
—By letter, dated July 9, 1870, the defendants, constituting the firm of Schuyler, Hartley & Graham, of the city of New York, employed the plaintiff, a commission merchant, in Paris, France, to sell for them in France certain arms and military goods, and in consideration that he should do so, the defendants in said letter, as is claimed by plaintiff, agreed to pay him as compensation for his services in ' selling the same or any part thereof, the difference between certain prices therein stated for such arms and military goods, and the price which should be obtained upon the sale thereof, and they also offered to sell to the plaintiff at the same prices any of the said goods. All sales were to be paid for in the city of New York.
*101 On July 19, 1870, war was declared between France and Prussia, and on July 29, 1870, the firm of which plaintiff was a member, replied to defendants’ letter of July 9, which had been written to plaintiff individually, to the effect that they could do nothing without samples, and that even with samples they hardly knew what could be done, as the war department had written that it was fully supplied.
On August 19, 1870, the defendants determined to send their confidential clerk, Mr. Reynolds, to France, with full power to act for them within certain instructions, which will presently be noticed, as their agent in the sale of goods, and on August 20, Reynolds sailed, taking with him some samples. Others were subsequently sent subject to his order. His instructions were to obtain prices, payable in New York, which were considerably higher than those which had been named to the plaintiff. In all other respects he seems to have been intrusted with full discretionary powers. He also bore a letter to plaintiff’s firm in which the defendants introduced him as the representative of their firm, and in which they requested plaintiff’s firm to co-operate with him.
Reynolds arrived in Paris on September 1, and on the following day he called on the plaintiff and handed him his letter of introduction. During the voyage of Reynolds some communications had passed between plaintiff and defendants, which, however, in the view hereinafter taken, are not of sufficient importance to be referred to with particularity.
On September 2, 1870, the day after the first interview with Reynolds, plaintiff wrote to the defendants that up to that time he had not accomplished any sales, that all was rocking in Paris, but that the financial bottom was all right, though the then government was about ended.
On September 4, there was a revolution in Paris, *102 which resulted, among other things, in the establishment, on September 8 or 9, of a commission of armament with authority to deal with private parties for the purchase of arms.
On September 12, defendants’ samples reached Paris, and on the following day May and Reynolds went together to the commission of armament to offer defendants’ goods. On their way there May proposed some changes in the prices of, some of the goods, and as these changes did not encroach upon the limits of Reynolds’ instructions, the latter assented that they might be made.
In the course of the negotiation which then ensued, the commissioners of armament expressed their willingness to take a large portion of the goods offered, but declined to pay until arrival; and as Reynolds was not authorized to sell, except for cash on shipment, the negotiation was suspended.
On the same evening May ascertained that four-fifths of the price which the commissioners of armament were willing to pay, would cover defendants’ interest in the sale, and thereupon he suggested to Reynolds, by way of getting over the difficulty, to propose to the commission that four-fifths be paid in Hew York on shipment, and the balance in France, on. arrival of the goods. May also agreed that in such case he would take his compensation out of the payment to be made in France. Reynolds agreed to the suggéstion. These terms were accordingly offered to, and finally accepted by the commission.
This transaction, together with further efforts made by May subsequently, during the siege of Paris, led to certain sales for "which the defendants received the whole of the proceeds. For the sales stated in the first, third, and fourth causes of action set up in the complaint, the referee found that the plaintiff is entitled to compensation.
*103 Up to this point there is no conflict of evidence, and plaintiff s right to compensation is not seriously questioned. But as to the amount of compensation to which he is entitled upon the sales stated in the first and third cause of action, there is a decided conflict.
Reynolds testified that at his first interview with May he showed May the memorandum of prices below which he was not authorized to sell; that May compared these prices with those of the July letter, and found that they were higher, but that he made no objection to the increase, and no claim to the July prices, and that if he had, he (Reynolds) would not have employed him.
Reynolds further testified that on several other occasions, between the first interview with May and their joint visit to the commission of armament, he distinctly informed May that under all circumstances the goods would have to net in Yew York the increased prices contained on his (Reynolds’) memorandum, and that May was satisfied with it.
And he also testified that, after a commission of five per cent, on his memorandum prices had been agreed upon, May, on the way to the commission of armament, proposed to ask in gold such of the memorandum prices as were in the currency of the United States, and that the difference should be allowed to him in addition to the five per cent., to which Reynolds assented.
May, on the other hand, says that at the first interview with Reynolds, as well as afterwards, he claimed the benefit of the July prices, and that he never agreed to take any different rate of compensation.
If the case rested here, and the proof showed that in the face of this claim made by May, Reynolds, without objection, accepted May’s services, the assent of Reynolds to May’s claim might be inferred, and if he had authority to bind defendants by such assent, *104 and thereupon the case presented simply a conflict of testimony, the fact as found by the referee could not be disturbed.
But the case does not rest here; nor does it present simply a conflict of testimony. The plaintiff, by his own testimony, showed that Reynolds never assented, but that, in reply to plaintiff’s claim, he always said that the plaintiff had to fight this out with Schuyler, Hartley & Grraham. On giving his version of the conversation had with Reynolds, immediately before their joint visit to the commission of armament, the plaintiff testified as follows:
Q. Did Mr. Reynolds then, or subsequently,—and if later state exactly at what stage of the proceedings —say anything to you, or did anything take place with reference to an effort on his part to increase the prices of the letter of July 9, 1870 ?
A. I have a list of prices in the handwriting of Mr. Reynolds, found among his papers, when I returned to Paris in the Spring of 1871, which, I think, he made that very day—the 13th of September.
Q. State what took place between Mr. Reynolds and yourself, with reference to those prices, and when it was, with reference to the commencement of your negotiations ?
A. He said, “We are going to show these samples now, and here are the prices, from which I will allow your concern a commission of five per cent., and all or any advance that you may obtain over those prices shall be for yourself.”
Q. Did he at that time show you a statement, or list of prices ?
A. He did ; and I said that I should not accept anything of that kind, that I worked by the letter of July 9, and he made use of the expression, “You will have to fight that letter with Messrs. Schuyler, Hartley ■& Grraham; these are the prices that I name.”
*105 Other similar admissions are in evidence.
Upon plaintiff’s own showing, therefore, it is difficult to perceive how the report of the referee can be sustained as to the first and third causes of action alleged in the complaint.
Assuming plaintiff’s construction of the letter of July 9 to be the correct one, the proposition therein contained and plaintiff’s acceptance thereof, constituted a special contract, and unless plaintiff actually effected a sale or offered to buy according to the terms of it, he can maintain no action upon it against the defendants. And no time being specified therein, the defendants, it seems to me, were at liberty to vary their terms or to revoke and terminate the contract at any time before any such sale was actually effected or offer made. Whatever authority was conferred, was one not coupled with an interest in the goods themselves. It therefore remained revocable. The interest contemplated by the rule making an agency coupled with an interest irrevocable, must be one in the subject over which the power is to be exercised, and the power of revocation always includes the power to modify.
That Reynolds, even if he did not revoke, did essentially modify the contract originally entered into between the parties, at least so far as the same could be done against plaintiff’s protest, and that for that purpose he possessed all the power and authority which the defendants themselves could have exercised if personally present, is not controverted, and there being no pretense on the part of the plaintiff that he subsequently came to an agreement with the defendants themselves concerning the point in dispute, it clearly appears from his own showing, that in point of fact there was a failure to agree upon a new rate of compensation. As to the extent of Reynolds’ authority I will add, that in his brief the learned counsel *106 for the plaintiff expressly concedes that there was no limitation of it in defendants’ letter accrediting him to the plaintiff.
The real question involved in the present appeal, therefore, is, whether the defendants immediately preceding the joint visit of the plaintiff and Reynolds to the commission of armament, remained at liberty to take back their original proposition and to insist upon an increase of prices. If they had the legal right to make this change, the referee erred in giving to plaintiff the benefit of the July prices, though, as between the plaintiff and Reynolds, he may have been justified in disbelieving Reynolds. And whether they were free to do so, depends upon the further question whether up to that time plaintiff had effected a sale or offered to buy according to the terms of the letter of July 9.
It is quite clear that he had done neither.
Leaving out of view tfie change that occurred by revolution in the French government, as a fact rather weakening than strengthening plaintiff’s case, the most that can be said of plaintiff’s efforts up to the time now under consideration is, that by them he had put himself into communication with a party desirous of purchasing in a certain contingency. But that was not enough. That the French government might eventually desire to buy some of the goods, was a matter clearly contemplated by the defendants before they wrote the letter of July 9. The existence and address of this possible purchaser was matter equally well known to both parties. To earn the benefit of the special contract upon which plaintiff relies, it was incumbent upon him to complete a bargain according to the terms of it.
Thus, in McGavock v. Woodlief (20 How. U. S. 221), it was held : “As the terms of sale were explicit, the proposal to fulfill should have been equally so. *107 Nothing should have been left to conjecture or speculation. There should have been as much certainty on one side of the contract as upon the other. Certainty in the offer to fulfill is as important to the vendor as certainty in the terms of the sale to the vendee, and equally necessary before the vendqr can be put in fault.
“The broker must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions.
“ Then he will be entitled -to them, though the vendor refuse to go on and perfect the sale.”
In short, when the right to compensation depends upon a special contract, plaintiff must perform the undertaking assumed by him, and no matter what the terms and conditions may be, upon which the right to compensation depends, they must be performed as a condition precedent to a right of action for the recovery of the specific compensation (Fraser v. Wyckoff, 63 N. Y. 445; Jacobs v. Kolff, 2 Hilt. 133; Gregory v. Mack, 3 Hill, 380).
It is only in cases where the broker is employed generally to find a purchaser, that it is sufficient to entitle him to compensation, that a sale is effected through his agency as its procuring cause. In such a case, his agency may consist, simply, in bringing the parties together, and leaving them to make their own bargain. Yet, if a sale actually results in consequence thereof, he is entitled to recover, and it then matters little whether the compensation for the service actually rendered has been fixed by agreement, or is left to depend upon a custom.
But the case at bar does not fall within that class of cases. It is a case of special contract which plaintiff had not performed, when defendants refused to be bound by it any longer. It was, therefore, competent *108 for them to prescribe new conditions, upon which they would continue bound, and upon such new conditions being made known to plaintiff, he - had his option to assent or to withdraw. Not having withdrawn, whatever services were subsequently rendered by him must be deemed to hane been rendered as if no agreement for compensation, except such as the law implies, had been made. As the case stands, his protest is unavailing in the absence of proof that it was heeded by the defendants, and that it led to a hew promise or agreement on their part, to pay the compensation originally named. It is not enough that he has rendered valuable services to the defendants. For these he may be entitled to a reasonable reward. But before he can recover the specific compensation sued for, it must appear, that before the change in the prices was communicated to him, he had done the very thing for which the reward that he demands was promised. True, strict performance could not be insisted upon, if it appeared that plaintiff, at the time in question, had substantially performed, and that the defendants had waived or prevented full performance. But the question of excuse for non-performance does not arise in this case. «
The referee therefore erred in computing plaintiff’s compensation claimed under the first and third causes of action alleged in the complaint upon the basis of defendants’ proposition contained in the letter of July 9, and in adjusting the accounts between the parties upon such erroneous computation ; and as such error necessitates a reversal of the whole judgment and the granting of a new trial, the point presented by plaintiffs’ appeal in consequence of the refusal of the referee to allow anything on account of the second cause of action alleged in the complaint does not require further consideration at present. Plaintiff’s claim in that respect will have to be examined again *109 upon the new trial, upon the evidence which may then be produced, and determined according to the rules of law called for by the facts as they may then be made to appear.
In conclusion it may be well to say a few words yet concerning the settlement made between the defendants and the Remingtons.- This, it is true, contained an admission by the defendants that the prices which they were entitled to receive, were only those contained in the letter of July 9. But such admission was not absolute proof of the fact, and the plaintiff himself has proved the contrary, as hereinbefore stated. On this state of facts the inference is that the Remingtons were wronged, and that they are entitled to recover the difference according to the proof in this case. But the plaintiff has no right to hold on to that difference.
The judgment should be reversed, the order of reference vacated, and a new trial ordered, with costs to defendants to abide the event.
Sedgwick, J., concurred.

The dissenting opinion contains nothing adverse to the propositions in the head-notes. The difference of opinion between the learned judges arises from the conclusions of facts which they arrive at from the evidence.
The prevailing opinion proceeds on the ground that defendants had modified the terms of the letter of July 7, and had, through Mr. *96 Reynolds, their duly authorized agent, notified the plaintiff of such modification before he had effected any sales under that letter.
The dissenting opinion proceeds on the ground that defendants had not, at any time before sales effected under the letter of July 9, changed, or communicated to plaintiff, or to Mr. Reynolds, any change in, the prices fixed by that letter, o